UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JING ZHANG, | ) |
|                Plaintiff, | ) ) ) |
| v. | )    23 C 3510 ) |
| BANK OF CHINA (CHICAGO BRANCH), | ) ) |
|                Defendant. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the motion is granted and Plaintiff's claims are dismissed without prejudice.

## BACKGROUND

Plaintiff Jing Zhang brings this action against her employer, Bank of China (Chicago Branch), alleging unlawful discrimination based on age and gender and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Illinois common law.[1] Defendant moves to dismiss Plaintiff's complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

---

[1] Plaintiff voluntarily withdrew her negligent infliction of emotional distress claim. *See* Dkt. # 29, at 21.

The following facts come from the complaint and are assumed true for the purpose of this motion. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). All reasonable inferences are drawn in Plaintiff's favor. *Id*.

Defendant is an international bank based in China, with branches in Chicago, Los Angeles, and New York City. Defendant hired Plaintiff as Assistant Vice President at the Chicago branch on June 1, 2015. She currently serves as Vice President. At the times relevant, Plaintiff was the second oldest employee working at Defendant's Chicago branch. She is currently the oldest employee at the Chicago branch.

Over the course of several years, Plaintiff's manager, Zhidan Liu ("Mr. Liu"), subjected Plaintiff to false accusations, public humiliation, and discriminatory and retaliatory treatment. For instance, beginning in or around July 2019, Mr. Liu frequently referred to Plaintiff as "jiejie", which Plaintiff alleges means "older sister"[2] in Chinese. Mr. Liu also consistently used "risk control" to unreasonably discipline and humiliate Plaintiff.

On September 17, 2020, Mr. Liu issued Plaintiff a warning letter for allegedly breaching Defendant's information security policy; however, other younger similarly situated male employees have engaged in nearly identical conduct but were not disciplined. Mr. Liu purposely worded the warning letter in a misleading way to indicate that Plaintiff's action was a "risk violation," though it was later confirmed that

---

[2] Defendants claim that, in social and professional settings, "jie jie" or "jie" can be used to address any female who is the same or similar age as a way of being polite and showing respect.

there was no risk violation. The warning letter was a formal disciplinary action, severe enough that the next level of progressive discipline would be suspension.

Mr. Liu transferred the management of several high-risk accounts to Plaintiff's team and designated her as the account officer for those accounts, which was beyond her professional capabilities and posed significant compliance risks. Mr. Liu also gave Plaintiff impossible tasks while not asking the same of Plaintiff's younger male peers. As a result, Plaintiff was forced to endure significant psychological stress.

Mr. Liu also subjected Plaintiff to constant scrutiny by ordering Plaintiff to provide weekly status reports, as well as updates on loan repayment statuses twice a week. This required Plaintiff to make frequent contact with multiple parties outside regular work hours and attend teleconference meetings between midnight and the early morning hours to accommodate the 12-hour time difference between Chicago and China, where most of Plaintiff's contacts were located.

The increased workload disrupted Plaintiff's sleep cycle, which substantially degraded Plaintiff's physical and mental health and resulted in the recurrence and rapid progression of hemifacial spasms. Plaintiff underwent brain surgery on February 12, 2021, for these spasms. Two days later, Mr. Liu insisted that Plaintiff complete an online training module that day even though she was still recovering from surgery.

On March 4, 2021, Mr. Liu escalated VPN login issues Plaintiff was having to an "increased operational risk level" and she was questioned about her computer

proficiency. This embarrassed her. VPN login issues were common, but Plaintiff was the only employee who was singled out over the issues.

On October 19, 2021, Plaintiff was reprimanded by Mr. Liu for a call loan incident that was beyond Plaintiff's control. A meeting was called wherein Plaintiff was accused of causing potential "operational risk and liquidity risk." The meeting minutes, which reiterated the accusations against Plaintiff, were sent to all front-line business colleagues, which humiliated and embarrassed her. When a younger male employee had an identical issue due to his own fault, the meeting minutes stated, "The early call loan caused additional funding costs for CHB. This incident is not considered an operational incident."

On October 22, 2021, Plaintiff was again humiliated by Mr. Liu for directly contacting Defendant's legal department regarding some questions in a customer's credit agreement. Mr. Liu called a meeting with five of Plaintiff's colleagues where he accused her of "wasting the bank's resources and ruining the professional image of the Chicago branch" and directed her to follow a non-existent protocol. Younger similarly situated male employees engaged in the same conduct but were not subject to the same level of humiliation by Mr. Liu.

For the two incidents that occurred in October 2021, Mr. Liu sent Plaintiff emails containing false and derogatory comments, such as suggesting that she needed to improve teamwork and pay greater attention to important deals, and he CC'd these

4

emails to the future Bank of China USA CEO. This jeopardized Plaintiff's future career advancement prospects.

The anxiety and stress caused to Plaintiff from these incidents led to a recurrence of hemifacial spasms. The terror associated with the prospect of another invasive surgical procedure precipitated a mental health crisis for Plaintiff, inducing severe depression shortly after these incidents occurred.

On November 15, 2021, Plaintiff complained to HR about Mr. Liu's conduct and the resulting deterioration of her mental and physical health. She did not receive a response until five months later, on March 18, 2022. The response regarded the term "jiejie" as an expression of respect rather than age-related discrimination. HR also affirmed Mr. Liu's decision to issue Plaintiff a warning letter, even though issuance of the letter was in direct conflict with Defendant's internal policies. Defendant's response to Plaintiff's complaint further deteriorated her mental health.

Thereafter, Mr. Liu created a significant disparity in the allocation of customer accounts between Plaintiff and younger similarly situated male employees, which placed Plaintiff at a disadvantage by limiting her opportunities to generate revenue. From January 2022 through July 2022, Mr. Liu scrutinized Plaintiff's requests to work offsite and required additional approval of her requests from HR. Similar requests to work offsite by younger similarly situated male employees were not subjected to the same scrutiny and approval process.

Plaintiff was forced to shoulder a significant and disproportionate amount of her team's workload. Mr. Liu also withheld access to Defendant's internal email system, which was vital for Plaintiff to carry out her job responsibilities effectively.

On July 13, 2022, Plaintiff received an unfair performance review in which Mr. Liu used inconsistent evaluation standards and ignored her positive contributions to the business.

On July 14, 2022, Plaintiff complained to HR and to Defendant's main branch about her performance review rating and the treatment she was receiving. In her complaint, Plaintiff explained that since October of 2021, Mr. Liu's actions took a toll on her health, that she lost 25 pounds, and that she was being treated for depression. She did not receive any response.

On July 18, 2022, Plaintiff attempted suicide. She was taken to the emergency room and hospitalized for four days, followed by participating in a six-week behavioral program. From July 18, 2022, through her anticipated return date of July 1, 2023, Plaintiff was on medical/disability leave due to her mental health condition.

Based on the above, Plaintiff filed her complaint alleging violations of Title VII, the ADEA, as well as intentional and negligent infliction of emotional distress under Illinois common law. Defendant moves to dismiss Plaintiff's complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

6

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

# DISCUSSION

## I. Timeliness

Defendant first argues that most of Plaintiff's allegations supporting her claims are time-barred; that only events that occurred on or after November 5, 2021—300 days before she filed her EEOC charge on September 1, 2022—are actionable. Plaintiff, in response, invokes the continuing violation doctrine to support her argument that the alleged instances of harassment that occurred outside the limitations period can nonetheless form a basis for relief under Title VII.

"[H]ostile work environment claims by '[t]heir very nature involve[ ] repeated conduct" and "occur[ ] over a series of days or perhaps years.'" *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712 (7th Cir. 2017) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). "Thus, if the alleged conduct forms a single unlawful employment practice falling at least in part within the statutory period, the court may consider conduct outside the statute of limitations as part of the hostile work environment claim." *Id.*

However, the Seventh Circuit has explained that "[t]he continuing violation doctrine does not apply where a plaintiff's allegations describe a series of discrete acts of discrimination." *Kuhn v. United Airlines, Inc.*, 640 F. App'x 534, 537 n.1 (7th Cir. 2016) (citing *Garrison v. Burke*, 165 F.3d 565, 570 (7th Cir. 1999)). To assert a successful continuing violation claim, the facts alleged to have occurred within the 300-day period must be "related closely enough" to the prior acts such that they are to be

8

considered one ongoing violation. *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995) (mere assertion of a hostile work environment did not establish a continuing violation where the alleged incidents of discriminatory harassment were not sufficiently related).

Here, Defendant argues the continuing violation doctrine does not apply because, assuming arguendo that each of the pre-November 2021 acts were discriminatory, they each constituted a separate, actionable employment practice. However, Plaintiff does not appear to be claiming that any of the incidents detailed in her complaint on their own amount to independently actionable adverse employment actions; rather, her claim "is for the cumulative effect of those events and that effect forms a 'single unlawful employment practice.'" *Lapka v. Chertoff*, 517 F.3d 974, 981 (7th Cir. 2008) (citing *AMTRAK v. Morgan*, 536 U.S. 101, 117 (2002)). In other words, Mr. Liu engaged in a course of conduct that is actionable, even if no individual action gives rise to a cause of action itself.

Most of the pre-November 2021 complaints would not give rise to a cause of action by themselves. Examples of discrete acts include termination, failure to promote, denial of transfer, or refusal to hire. *See Morgan*, 536 U.S. at 114. Plaintiff's allegations do not include similar events.³ Because Mr. Liu's allegedly harassing behavior

---

³ Defendant argues that the sole allegation that relates to Plaintiff's gender and age is when Mr. Liu referred to Plaintiff as "jiejie" in July 2019, and that counts as a discrete, actionable act. However, the allegation is that "beginning in or around July 2019" Mr. Liu "frequently" referred to Plaintiff as "jiejie." This allegation does not clearly make Plaintiff's claim untimely, because it does not establish when, if ever, Mr. Liu stopped using that term. Thus, the Court will not disregard this allegation at this stage of the litigation.

continued into the limitations period, the Court is permitted to assess his entire course of conduct in determining whether Plaintiff's complaint states a claim.[4]

## II. Failure to State a Claim

### A. Hostile Work Environment Claims

Defendant next argues Plaintiff fails to allege any facts supporting a hostile work environment claim. Because the Seventh Circuit uses Title VII's framework for analyzing hostile work environment claims brought under the ADEA, the Court does so here as well. *See Tyburski v. City of Chicago*, 964 F.3d 590, 600 (7th Cir. 2020).

An employer creates a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). To establish such a claim, "a plaintiff must show: (1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Trahanas v. Northwestern Univ.*, 64 F.4th 842, 853 (7th Cir. 2023). Several considerations play into whether an environment is hostile: "the frequency of the discriminatory conduct; its severity; whether it is

---

[4] In a footnote, Defendants also argue that Plaintiff failed to exhaust her administrative remedies with respect to her ADEA claims. However, arguments raised only in footnotes are waived. *See Schrock v. Learning Curve Int'l, Inc.*, 744 F. Supp. 2d 768, 770 (N.D. Ill. 2010) ("Undeveloped arguments and arguments raised in footnotes are waived." (citing *Goren v. New Vision Int'l*, 156 F.3d 721, 726 n.2 (7th Cir. 1998)). The Court declines to dismiss Plaintiff's ADEA claims on this basis.

10

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Casino Queen*, 739 F.3d at 982 (quoting *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691–92 (7th Cir. 2005)). A workplace "need not be hellish to constitute a hostile work environment." *Jackson v. Cnty. of Racine*, 474 F.3d 493, 500 (7th Cir. 2007). What matters is whether the conduct became so severe or pervasive that "a reasonable person would find [it] hostile or abusive." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).

Defendant contends Plaintiff's allegations are merely "a series of minor or trivial employment actions" that, even considered in combination, do not rise to the level of an abusive work environment. Dkt. # 34, at 6–7. To survive Defendant's motion to dismiss, Plaintiff must plausibly allege that the work environment was *objectively* offensive. Having supervisors who are "'short tempered,' 'hostile,' unfairly critical, and disrespectful," or being subjected to "excessive monitoring" does not amount to "objectively offensive, severe, or pervasive" conduct. *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018); *see also Hambrick v. Kijakazi*, 79 F.4th 835, 843 (7th Cir. 2023) ("heavy workload, management's high expectations, and routine workplace discipline" is not enough); *Wilson v. Hispanic Hous. Dev. Corp.*, 2021 WL 2012239, at *9 (N.D. Ill. May 20, 2021) ("Title VII doesn't recognize a cause of action for having a bad boss."). "Even insults specifically referencing age do not necessarily rise to the level of actionable harassment." *Tyburski*, 964 F.3d at 602.

11

Plaintiff's allegations that she was called "jiejie" plainly do not suffice to plausibly establish an abusive working environment and instead fall into the category of "offhand comments, isolated incidents, and simple teasing" that do not rise to the level of conduct altering the terms and conditions of employment. *See id.*; *Passananti v. Cook Cnty.*, 689 F.3d 655, 667 (7th Cir. 2012). In *Tyburski*, for example, the Seventh Circuit held that nine age-related comments over the course of four years made by two of the plaintiff's coworkers was not severe or pervasive harassment. 964 F.3d at 602. These comments included "you [are] too old. You cannot keep up with me"; you are "f**king old" and do "not know what [you] are doing"; and "you are old and you [are a] piece of s**t." *Id.* at 595. Moreover, in *Racicot v. Wal-Mart Stores, Inc.*, regular comments by two of the plaintiff's coworkers that the plaintiff "shouldn't be working at her age" and if the plaintiff "were younger, [the plaintiff] could pick up boxes when heavy shipments arrived" was not severe or pervasive harassment. 414 F.3d 675, 676–78 (7th Cir. 2005).

Even taken together, Plaintiff's claims do not plausibly amount to a working environment "permeated with discriminatory intimidation, ridicule, and insult" to support a hostile working environment claim. *See, e.g.*, *Dodgen v. AARP*, 2022 WL 4607926, at *4 (N.D. Ill. 2022) ("While Dodgen may have been unhappy with Anderson's management, or felt unfairly scrutinized, nothing in the complaint plausibly suggests that Anderson's or Gallo's actions towards Dodgen rose to the level of hostility required to sustain a hostile work environment claim."); *Duniya v. Power*, 2023 WL

2755132, at *4 (N.D. Ill. 2023) (complaints of "being assigned additional duties, having a temporary assignment cancelled, having other duties taken away from him, being verbally admonished during a meeting, receiving poor marks on his evaluation, having overtime payment requests denied, being bullied, and receiving a suspension" are "general workplace complaints [that] do not allow the Court to infer that a reasonable person would find his work environment hostile and instead appear to merely reflect Duniya's displeasure with his supervisors' management of his work.").

Plaintiff's hostile work environment claims are dismissed, without prejudice.

### B. Retaliation Claims

To plead a retaliation claim, Plaintiff must allege that she engaged in a statutorily protected activity and that she was subjected to an adverse action as a result. *Leuyano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). The bar for what qualifies as an adverse action in the retaliation context is lower than in the discrimination context. A plaintiff merely needs to show that the employer's actions could have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016). That being said, Title VII does not set forth a "general civility code for the American workplace," so "petty slights, minor annoyances, and bad manners" do not qualify as adverse actions. *Id.* Only that retaliation which "produces an injury or harm" constitutes an actionable adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

67 (2006); *see also Lewis v. Wilkie*, 909 F.3d 858, 867–68 (7th Cir. 2018) ("[P]etty slights or minor annoyances that often take place at work" do not suffice).

Plaintiff made her initial complaint to HR on November 15, 2021. She alleges that Mr. Liu subsequently retaliated against her by reducing the number of customer accounts assigned to her, intentionally subjected Plaintiff to staff shortages, scrutinized her requests to work offsite and required additional approval from HR, and withheld access to computer resources necessary to complete her duties. He also gave her a low performance rating—eight months after she complained.

It is well established that harder work assignments do not amount to an adverse employment action. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003); *see also McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 625 (7th Cir. 2004) (an adverse employment action is "more disruptive than . . . an alteration of job responsibilities."). Additionally, verbal reprimands and negative performance evaluations which do not result in harm generally do not amount to adverse employment actions. *Lewis*, 909 F.3d at 868; *see also Bell v. E.P.A.*, 232 F.3d 546, 554–55 (7th Cir. 2000) ("demeaning assignments, verbal abuse, surveillance, diminished responsibilities, refusal to cooperate on job assignments, and placements in situations designed to result in failure" even in the aggregate, "do not rise to the level of actionable retaliation"). Plaintiff does not allege enough "factual content that allows the court to draw the reasonable

14

inference" that Plaintiff was retaliated against for engaging in activities protected by Title VII and the ADEA. Plaintiff's retaliation claims are dismissed, without prejudice.

### C. Intentional Infliction of Emotional Distress Claim

Because Plaintiff's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim. *See* 28 U.S.C. § 1367(c)(3).

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss [18] is granted. Plaintiff's Title VII and ADEA claims are dismissed without prejudice, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim. Plaintiff may file an amended complaint by 3/5/27. Telephonic status hearing set for 3/19/24 at 9:50 a.m.

It is so ordered.

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

Date: February 6, 2024