IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JING ZHANG,

    Plaintiff,

    v.

BANK OF CHINA,

    Defendants.

Case No. 23 CV 3510

Judge Georgia N. Alexakis

## MEMORANDUM OPINION AND ORDER

Plaintiff Jing Zhang brings this suit against her former employer, defendant Bank of China ("the Bank"), alleging that the Bank violated state and federal laws when it discriminated against her based on her age, sex, and disability status. In February 2024, a previous district court granted the Bank's motion to dismiss Zhang's original complaint. After the case was reassigned to this Court, Zhang, proceeding *pro se*, amended her complaint. The Bank now moves to dismiss all counts of Zhang's amended complaint. For the reasons discussed below, the Court largely grants the Bank's motion, but denies the motion in two respects. The Court also grants the Bank's motion to strike the exhibit to Zhang's complaint pursuant to Federal Rule of Civil Procedure 12(f).

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need only contain factual allegations that, accepted as

1

true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the pleading stage, the Court must "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff," as it does in the background section that follows. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). But "allegations in the form of legal conclusions are insufficient." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## BACKGROUND

From June 2015 to November 2024, Zhang worked first as a Team Lead and then as a Vice President at the Bank's Chicago Branch. [99] ¶ 9. In June 2023, Zhang (who was represented by counsel at the time) filed suit against the Bank, bringing claims for (1) gender- and age-based discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, (2) intentional infliction of emotional distress ("IIED"), and (3) negligent infliction of emotional distress. In February 2024, a previous district court granted the Bank's

motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("February 2024 Order"). [36]. Specifically, the district court held that Zhang had not stated a claim under Title VII or the ADEA and declined to exercise supplemental jurisdiction over the remaining state law claims. *See id.* at 10–15. The Court assumes familiarity with the facts as outlined in the February 2024 Order. *See id.* at 1–6.

A few weeks after the previous district court dismissed Zhang's claims, her counsel withdrew from the case. *See* [38], [39]. Now proceeding *pro se*, Zhang was granted a stay of proceedings and several extensions to file an amended complaint. *See, e.g.*, [41]; [72]; [78]. In December 2024 Zhang filed an amended complaint, *see generally* [99]. In her amended complaint, Zhang brings claims for: (1) age discrimination and retaliation under the ADEA (Count I), (2) gender discrimination and retaliation under Title VII (Count II), (3) failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count III) (4) negligence (Count IV), (5) defamation (Count V), (6) wrongful termination (Count VI), and (7) intentional infliction of emotional distress (Count VII). *Id.*

In addition to the facts supporting her initial complaint, Zhang now alleges that after she attempted to amend her complaint in March 2024, the Bank—including her new Branch Manager, Libo Sun—"intensified retaliation against her." [99] ¶ 38. This included threatening to demote her, *id.* ¶ 39, and assigning her a "C" rating for her 2023 annual performance evaluation, *id.* ¶ 40. From June to October 2024, Zhang alleges that she faced escalating scrutiny and was criticized for "lacking business expertise and commercial sense" and "wasting [the Bank's] money," among other

things. *Id.* ¶¶ 41–43, 46. During this time, Zhang sought urgent psychiatric help to treat her depression and anxiety. *Id.* ¶¶ 44–45.

Zhang also alleges that from June to September 2024, Sun denied her requests to work from home to accommodate her medical needs. *Id.* ¶¶ 50–52. Zhang complained to human resources that the work-from-home denials violated the ADA, but human resources did not act on her complaint. *Id.* ¶ 53. On November 15, 2024, Zhang and three members of her team were "abruptly terminated" on 19 customer accounts. *Id.* ¶ 47. That same day, Zhang was terminated from the Bank altogether, which she says "further exacerbat[ed] her mental health struggles." *Id.* ¶ 48.

In January 2025, the Bank moved to dismiss all seven counts of Zhang's amended complaint. *See generally* [104]. To the extent additional allegations from Zhang's amended complaint are relevant, the Court discusses them in the analysis that follows.

## DISCUSSION

The Court begins by addressing three of the Bank's preliminary arguments, namely that (1) the Court should strike the exhibit to Zhang's amended complaint, (2) certain of Zhang's federal claims are barred by a 300-day statute of limitations, and (3) Zhang failed to exhaust her claims based on more recent events that occurred after she initially filed this suit. After discussing these issues, the Court addresses each of Zhang's federal and state-law claims in turn.

### A. Preliminary Issues

#### 1. Motion to Strike

The Bank asks the Court to strike the exhibit Zhang attaches to her first amended complaint pursuant to Rule 12(f), which permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A district court has "considerable discretion" in deciding whether to strike contents of a complaint pursuant to Rule 12(f). *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

Here, Zhang's exhibit consists of eight narrative pages with information that is either redundant to the allegations in her complaint or not helpful to the Court in determining whether Zhang has stated a claim. *See generally* [99] at 31–39. The exhibit also contains various charts and email evidence that run afoul of Rule 8(a)(2)'s requirement that a pleading contain "a *short* a*nd plain statement* of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). Moreover, in past attempts to amend her complaint, the Court has repeatedly warned Zhang that such narrative recitations are not the proper format to state a claim. *See, e.g.*, [94] at 8:20–25. Finally, the Court observes that Zhang's response does not reference any of the information provided in the exhibit. *See generally* [109]. Therefore, the Court strikes the information contained in pages 31 to 38 of the complaint pursuant to Rule 12(f) as immaterial and redundant. The Court does not consider this information in the analysis that follows.

5

### 2. Statute of Limitations

To bring claims under Title VII, the ADEA, and the ADA, a plaintiff must file charges with the EEOC within 300 days of the alleged discrimination. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1)(B) (ADEA); 42 U.S.C. § 12117(a) (incorporating Title VII's limitations period into the ADA). Zhang filed her initial EEOC charge on September 1, 2022; thus, under the ordinary rule, the alleged discrimination must have occurred on or after November 5, 2021. *See* [1] Exhibit A.[1]

Many of Zhang's allegations of discriminatory conduct occurred before this date. *See, e.g.*, [99] ¶ 14 (alleging that she was forced to complete training only two days after her brain surgery in February 2021), *id.* ¶ 16 (alleging that during 2020 she was "repeatedly called 'jiejie'"). In its February 2024 Order, the previous district court held that because Zhang alleged a hostile work environment based on the "cumulative effect" of the discriminatory events as part of a hostile work environment claim, the Court could consider conduct that occurred before November 5, 2021, as part of the continuing violation doctrine. *See* [36] at 9–10; *see also Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712 (7th Cir. 2017) ("[I]f the alleged conduct forms a single unlawful employment practice falling at least in part within the statutory period, the court may consider conduct outside the statute of limitations as part of the hostile

---

[1] The Court ordinarily may not consider matters outside the operative complaint in determining whether a plaintiff has set forth the facts necessary to satisfy a defendant's affirmative defense at the pleading stage. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). However, the Court "may take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts from prior proceedings in the case." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013). Here, because Zhang attached her September 1, 2022 EEOC charge to her initial complaint, *see* [1] Exhibit A, the Court takes judicial notice of the September 1 date for statute of limitations purposes.

work environment claim."). The previous district court nevertheless went on to conclude that Zhang had failed to state hostile work environment claims, although its dismissal of those claims was without prejudice. [36] at 10–13.

Now, in her amended complaint, Zhang no longer alleges that she was subject to a hostile work environment; nor does she rely on that theory in her response. *See generally* [99]; [109]; *compare with* [1] ¶¶ 42, 48, 55, 62. Therefore, because her discrimination claims are based on discrete acts, any actions that took place before November 5, 2021, are barred by the 300-day limitations period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[E]ach discrete discriminatory act starts a new clock for filing charges alleging that act."). The Court accounts for this limitation in the analysis that follows.

Zhang asks the Court to equitably toll her discrimination claims that occurred before November 5, 2021, because she "suffered severe depression, anxiety, a suicide attempt, and had to take a year-long disability leave due to workplace retaliation." [109] at 3. Equitable tolling is applied "only when extraordinary circumstances far beyond the litigant's control prevented timely filing." *Simms v. Acevedo*, 595 F.3d 774, 781 (7th Cir. 2010). The Seventh Circuit has held that mental incompetence can support equitable tolling, *see Davis v. Humphreys*, 747 F.3d 497, 498–99 (7th Cir. 2014), but Zhang does not allege that she was incapacitated by her depression or anxiety, especially where her allegations make clear she continued to perform her job during this time. Although it is unfortunate that Zhang's condition prevented her from timely filing, her circumstances were not so extraordinary as to warrant the rare

7

remedy of equitable tolling. *See Carpenter v. Dittmann*, No. 14-CV-771-JPS, 2015 WL 687499, at *5 (E.D. Wis. Feb. 18, 2015) (declining to equitably toll claims based on plaintiff's mental health); *see also Angiulo v. United States*, 867 F. Supp. 2d 990, 1002 (N.D. Ill. 2012) (suggesting a "high threshold of incapacitation is required before a court will grant equitable tolling to extend the time limits for a claim").[2]

### 3. Administrative Exhaustion

To assert a Title VII, ADEA, or ADA claim in federal court, a plaintiff must first exhaust her administrative remedies with the EEOC. *See* 42 U.S.C. § 2000e–5(e); *Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006). Once a plaintiff receives a right-to-sue letter from the EEOC, she may only bring suit as to "those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (internal quotation marks omitted).

The Bank argues that Zhang failed to exhaust her administrative remedies for claims premised on conduct that occurred after she filed her underlying EEOC charge on September 1, 2022. [105] at 2–3. In her response, Zhang now says she filed a second EEOC charge and received a second right-to-sue letter on February 7, 2025. She has attached a copy of her second right-to-sue letter, although not the charge itself, to her response brief. *See* [109] at Exhibit 1.

---

[2] Zhang also asks the Court to equitably toll her ADA claim that relies on the Bank's actions in September 2024. [109] at 2. But for now, the Court only holds that the statute of limitations bars claims that took place 300 days before she filed her initial EEOC charge on September 1, 2022. *See supra* at 6–8. Because the Court has not held that the Bank's September 2024 actions are barred by any statute of limitations, Zhang need not rely on equitable tolling.

"Exhaustion of administrative remedies is an affirmative defense that is generally not resolved on a motion to dismiss because a plaintiff 'has no obligation to allege facts negating an affirmative defense in her complaint.'" *Dumka v. Johnson*, 2015 WL 9268369, at *2 (N.D. Ill. Dec. 19, 2015) (quoting *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006)) (cleaned up). An exception to this rule applies where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Andonissamy*, 547 F.3d at 847 (cleaned up). That is, "a district court may dismiss a complaint if the existence of a valid affirmative defense, such as the failure to exhaust, is so plain from the face of the complaint that the suit can be regarded as frivolous ...." *Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010).

In its reply brief, the Bank contends that it has "never seen the new EEOC Charge" and that Zhang "did not reference the EEOC Charge or the EEOC Notice anywhere in her [amended complaint]." [119] at 2. But the Bank overlooks the principle just discussed: at the motion to dismiss phase, Zhang need not anticipate the Bank's failure-to-exhaust affirmative defense by attaching or alleging the details of her most recent EEOC charge. *See Mosely*, 434 F.3d at 533. Dismissal on exhaustion grounds is therefore premature. *See Vance v. Amazon.com Servs., LLC*, No. 24 C 1111, 2024 WL 3823176, at *1–2 (N.D. Ill. Aug. 14, 2024) ("An alleged failure to exhaust administrative remedies is considered an affirmative defense and 'the earliest possible time to consider it would normally be after the answer has been filed,

if it is possible to decide the issue through a Rule 12(c) motion for judgment on the pleadings.'") (quoting *Mosely*, 434 F.3d at 533).

### B. Age Discrimination and Employment Act (Count I)

In Count I, Zhang claims that the Bank violated the ADEA by discriminating and retaliating against her based on her age. *See* [99] ¶¶ 73–75. Specifically, she alleges that in September 2022 she was "bypassed for a promotion in favor of a younger employee at the branch" and later was "denied professional growth opportunities and ultimately terminated under pretextual claims of restructuring." *Id.* ¶¶ 20, 75(1), 95.[3] "The tests under the ADEA and Title VII are virtually identical" at the pleading stage. *Stone v. Bd. of Trs. of N. Illinois Univ.*, 38 F. Supp. 3d 935, 945 (N.D. Ill. 2014).

The Bank argues that Zhang does not state a failure-to-promote claim because her complaint lacks specific allegations about the position, whether she applied and was qualified, and whether the younger employee was less qualified. [105] at 8. But to state a discrimination claim under the ADEA, "a plaintiff need not allege facts aligning with her claim's every element, which she will have to prove for her claim to survive summary judgment." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). Instead, "a complaint alleging [age] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [age]." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008);

---

[3] The Bank does not argue that this claim is barred by the 300-day statute of limitations, although even if it had, Zhang's complaint does not include allegations that would satisfy such a defense. Of course, nothing precludes the Bank from raising this defense in a later procedural posture.

*see also id.* at 1085 ("In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense."). To allege an adverse employment action, a plaintiff "must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024). However, she need not show that the harm was "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355. The statute only requires that the plaintiff be "treat[ed] worse" based on their protected characteristic, but it does not specify "how much worse." *Id.*

As for causation, at the pleading stage, a plaintiff "need only allege enough facts to allow for a plausible inference that the adverse action suffered was connected to her protected characteristics." *Kaminski*, 23 F.4th at 777 (citing *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021)). In other words, all a plaintiff must do is explain "how she was aggrieved and what facts or circumstances lead her to believe her treatment was *because* of her membership in a protected class." *Id.* at 777–78 (emphasis in original).

Zhang meets this standard. To support her ADEA claim, she alleges that in September 2022 she was "bypassed for a promotion in favor of a younger employee at the branch." [99] ¶ 20. She also sufficiently alleges facts that would lead her to believe this was because of her age. For example, she alleges that her former Branch Manager, Zhidan Liu, called her "old jiejie with a history of system security violations"—"jiejie" meaning "older sister" in Chinese—and accused her of "having

outdated thinking." *Id.* ¶¶ 16, 74(1). On another occasion, she says she was "singled out and issued a written warning letter for an alleged information security violation, while younger employees engaging in similar actions faced no consequence." *Id.* ¶ 17. Finally, she alleges generally that, "as the oldest employee at the Chicago Branch, [she] endured derogatory remarks, public humiliation, baseless discipline, and retaliation due to her age." *Id.* ¶ 74(1). Based on these facts, Zhang has plausibly pled that she was bypassed for a promotion because of her age. *See Kaminski*, 23 F.4th at 777.

Zhang also alleges that the Bank retaliated against her based on her age. To state a claim for retaliation, "a plaintiff must allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013) (citing *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996)). "'Protected activity' is 'some step in opposition to a form of discrimination that the statute prohibits.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011)). An adverse employment action in the retaliation context must be material—in other words, something that might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). This standard requires something "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Boss v. Castro*, 816 F.3d 910,

918 (7th Cir. 2016) (quoting *Hobbs v. City of Chicago*, 573 F.3d 454, 463–64 (7th Cir. 2009)); *see also id.* ("petty slights, minor annoyances, and bad manners" do not suffice).

Zhang first alleges that the Bank retaliated against her after she filed an initial complaint "about Mr. Liu's discriminatory actions and harassment" in November 2021. [99] ¶ 27. But the previous district court already held that Zhang did not state an adverse employment action with respect to this portion of her retaliation claim, *see* [36] at 14–15, and the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," *Pepper v. United States*, 562 U.S. 476, 506 (2011); *see also Sharp Elecs. Corp. v. Metro. Life Ins. Co.,* 578 F.3d 505, 510 (7th Cir. 2009) (law of the case doctrine is "designed to further consistency, to avoid constantly revisiting rulings, and to conserve judicial resources"). Here, Zhang adds no new allegations that would permit the Court to deviate from the previous district court's finding, so Zhang still has not stated a retaliation claim stemming from her November 2021 complaint about Liu's discrimination.

Zhang also brings a retaliation claim stemming from her March 2024 attempt to amend her complaint in this suit. [99] ¶ 38. Specifically, she alleges that in response to her March 2024 filing, the Bank assigned her a "C" rating on her 2023 performance evaluation in May 2024 (the lowest she had received in nine years at the Bank), "effectively putting her job security at risk." *Id.* ¶ 40. During other performance reviews and meetings in the following months, Sun "accused her of

lacking business expertise and commercial sense" and "wasting [the Bank's] money." *Id.* ¶¶ 43, 46. According to Zhang, this retaliation culminated in her termination from the Bank in November 2024. *Id.* ¶ 48.

Zhang does not plausibly connect her March 2024 attempted amended complaint with the adverse actions she says she experienced afterwards. To start, Zhang does not allege facts suggesting that Sun knew she had tried to amend her complaint. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 669 (7th Cir. 2006) (proving retaliation under the indirect method "presupposes that the decision-maker knew that the plaintiff engaged in a statutorily protected activity, because if an employer did not know the plaintiff made any complaints, it 'cannot be trying to penalize him for making them'") (quoting *Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 668–69 (7th Cir. 2005)); *see also Rosas v. Bd. of Educ. of City of Chicago*, 652 F. Supp. 3d 951, 962 (N.D. Ill. 2023) (dismissing claim for retaliation because "the Complaint allege[d] no facts to suggest that [the decisionmaker] even knew about Plaintiff's complaints"). Moreover, based on timing alone, the Court cannot plausibly infer causation between her March 2024 attempted amended complaint and (1) her "C" performance rating, which occurred nearly two months later, and (2) her termination, which occurred nearly eight months later. *See Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (47-day gap between protected activity and adverse action did not allow inference of causation). Besides suspicious timing, Zhang alleges no other facts from which the Court can plausibly infer that her poor performance rating and

termination occurred "as a result of" her amended complaint. *Luevano*, 722 F.3d at 1029.

In sum, the Court denies the Bank's motion to dismiss Count I to the extent Zhang brings an ADEA discrimination claim but grants the motion with respect to her ADEA retaliation claim. The dismissal of Zhang's ADEA retaliation claim is with prejudice.

### C. Title VII of the Civil Rights Act (Count II)

In Count II, Zhang alleges that the Bank violated Title VII of the Civil Rights Act of 1964 when it discriminated and retaliated against her based on her sex. *See* [99] ¶¶ 76–81. The same pleading standard applies to Title VII context discrimination claims as to ADEA discrimination claims: Zhang must plead that the Bank "instituted a (specified) adverse employment action against [her] on the basis of her [age]." *Tamayo*, 526 F.3d at 1084.

Zhang alleges she experienced gender-based discrimination in the following ways: (1) she was publicly accused of creating "operational risk" and of "wasting the bank's resources, … ruining the professional image of the Chicago branch in front of the New York Branch, and violating a non-existent CHB internal work assignment procedure," [99] ¶ 21–22 (cleaned up); (2) Liu fabricated lies to the Bank's CEO, including that Zhang "required excessive guidance in basic responsibilities like business development and teamwork," *id.* ¶ 23; (3) Liu "ignored [Zhang's] concerns" about the operational risks from a male colleague's poor work, *id.* ¶ 24; and (4) "Liu

15

subjected her attendance requests to HR scrutiny, while ignoring [a male colleague's] frequent policy violations without approval," *id.* ¶ 25.

The first three of these complaints are not adverse employment actions because they did not affect the "terms or conditions" of Zhang's employment with the Bank. *See Garcia v. Noem*, No. 24-1887, 2025 WL 2160140, at *3 (7th Cir. July 30, 2025) (plaintiff's "feelings of humiliation … did not affect any condition of [plaintiff's] employment); *see also Rios v. Centerra Grp., LLC*, 106 F.4th 101, 112–13 (1st Cir. 2024) ("A mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment."); *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 903 (6th Cir. 2024) (counseling and reprimands are not adverse employment actions).

As for her complaint of increased human resources scrutiny, changes to human resources matters such as leave and attendance policies can sometimes affect the terms and conditions of employment. *See Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024). But here, Zhang does not allege that the Bank's scrutiny of her attendance requests materialized in a change to her work conditions. For example, Zhang does not say whether she was merely reprimanded for her attendance requests or whether she was actually denied time off. (Zhang does allege that she was denied the ability to work remotely, but that denial took place in 2024, well after the alleged increased scrutiny by HR of her attendance requests in 2022,

*see id.* ¶¶ 50, 52.) Zhang therefore does not adequately allege that she experienced an adverse employment action based on her gender.

Zhang also brings a Title VII claim for retaliation premised on the Bank's response to her reporting the discriminatory behavior to human resources. [99] ¶ 77. For the same reasons already discussed in the context of Zhang's ADEA retaliation claim, Zhang does not plausibly connect the filing of her attempts to amend her complaint to the negative performance rating nearly two months later and her termination nearly eight months later. *See supra* at 14–15.

For these reasons, the Court grants the Bank's motion to dismiss Count II with respect to both Zhang's Title VII discrimination and retaliation claims. The dismissal is with prejudice.

## D. Americans with Disabilities Act (Count III)

In Count III, Zhang claims the Bank failed to accommodate her disability in violation of the Americans with Disabilities Act ("ADA"). *See* [99] ¶¶ 79–81. To state a claim for failure to accommodate under the ADA, a plaintiff must allege: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013) (citing *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)). The ADA defines "qualified individual" to mean "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

17

Zhang meets these basic requirements. First, the Court infers she is a "qualified individual" under the ADA based on her allegations that she possessed "[t]he skill set and qualifications required for managing syndication accounts" and was "the longest-serving and most experienced corporate banking officer both in China and in the States." [99] ¶ 68. Zhang also pleads that she is "disabled" under the ADA—she alleges that she has been diagnosed with "severe depression and anxiety" and as a result experiences "fatigue, chronic pain, poor concentration, []memory loss" and difficulty sleeping. *Id.* ¶¶ 39, 79, 103(2)(B); *see also* 42 U.S.C. § 12102(2)(A) (defining major life activities as, among other things, "sleeping," "concentrating," and "thinking"). She further alleges that the Bank was aware of her disability, *see* [99] ¶¶ 51, 80(1), and that the Bank denied her requests to accommodate her disability by working from home on particular days in June 2024 and September 2024, *id.* ¶ 80(1); *see also id.* ¶¶ 50–52. (It appears that Zhang was able to work from home on a more extended basis at another point during her employment. *Id.* ¶ 64.)

The Bank does not challenge Zhang's failure to accommodate claim on the merits—it only argues that Zhang fails to meet the post-*Muldrow* standard to plead an adverse employment action for an ADA discrimination claim. Because the Bank has presented no reason to dismiss Zhang's failure to accommodate claim, the Court denies the Bank's motion to dismiss Count III.

### E. Negligence (Count IV)

In Count IV, Zhang brings a claim for common law negligence under Illinois law. *See* [99] ¶¶ 82–86. The Bank argues this claim is preempted by the Illinois Workers' Compensation Act ("IWCA"), which "provide[s] financial protection to workers for accidental injuries arising out of and in the course of employment." *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990); *see also* 820 ILCS 305 *et seq*. The IWCA "imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer."[4] *Meerbrey*, 139 Ill. 2d at 462; *see also Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017) (the IWCA is the "exclusive remedy for accidental injuries transpiring in the workplace"). To avoid this exclusivity rule, a plaintiff must demonstrate that her injury "(1) was not accidental, (2) did not arise from her employment, (3) was not received during the course of her employment, or (4) is not compensable under the Act." *Nischan*, 865 F.3d at 934 (cleaned up) (quoting *Hunt–Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1016 (7th Cir. 1997)).

Zhang contends that the IWCA does not preempt her negligence claim because the Bank's actions were not accidental. But negligence is not an intentional tort. *See*

---

[4] Specifically, § 5(a) of the IWCA provides that:

> No common law or statutory right to recover damages from the employer … or the agents or employees of … [the employer] for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act.

820 ILCS 305/5(a).

*Phillips v. Exxon Mobil Corp.*, No. 17 C 07703, 2018 WL 3458286, at *4 (N.D. Ill. July 18, 2018) ("Because negligence claims are necessarily accidental, plaintiff has alleged (and thus admitted) the elements of defendant's preemption defense."). Therefore, "[a]n act of negligence, even if committed by the employer itself, is 'accidental' for purposes of the IWCA." *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 957 (N.D. Ill. 2002); *see also Walker v. Drs. Hosp. of Hyde Park*, 110 F. Supp. 2d 704, 714 (N.D. Ill. 2000) ("The IWCA abrogates employer liability for all common law negligence claims."). The Court therefore grants the Bank's motion to dismiss Count IV with prejudice.

### F. Defamation (Count V)

In Count V, Zhang brings a claim for defamation under Illinois law. To state a claim for defamation in Illinois, "a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009) (citing *Krasinski v. United Parcel Service, Inc.*, 124 Ill.2d 483, 490 (1988)). "A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Id.* (citing *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 10 (1992)).

A statement is defamatory *per se* if its harm to the plaintiff's reputation is "obvious and apparent on its face." *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill.2d 558, 579 (2006). There are five categories of defamation *per se* in Illinois: "(1) words

that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication." *Id.* at 579–80.

Here, the Bank's alleged defamatory statements fall under the third and fourth categories. Specifically, Zhang alleges that "[i]n the A-Corporation Call-loan and L-Corporation Credit Agreement Incidents, Mr. Liu fabricated risks and escalated routine branch activities to the Deputy CEO (now the CEO), falsely portraying [Zhang] as lacking basic skills in business development and teamwork." [99] ¶ 88(1). She also alleges that "Mr. Sun repeatedly accused [Zhang] of 'lacking expertise, commercial sense, and team management skills' in front of her team, HR, and senior management." *Id.* ¶ 88(2). To succeed under the third and fourth categories of defamation *per se*, "the plaintiff must have been accused of lacking *ability in his trade* or doing something bad *in the course of carrying out his job*." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) (citing *Clarage v. Kuzma*, 342 Ill.App.3d 573, 581 (Ill. App. Ct. 2003)); *see also Basile v. Prometheus Glob. Media*, 225 F. Supp. 3d 737, 743 (N.D. Ill. 2016) (statements were not defamation *per se* because did not "disparage [plaintiff's] skills as a production account or accuse[] her of being unable to perform the specific duties of a production accountant").

21

The Bank argues that its alleged statements about Zhang's skills are protected as statements of opinion. [105] at 11. "To be actionable, the allegedly defamatory statement must contain an objectively verifiable factual assertion." *Giant Screen Sports v. Canadian Imperial Bank of Com.*, 553 F.3d 527, 535 (7th Cir. 2009). "If it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Id.* at 534–35. Although "in one sense all opinions imply facts, the question of whether a statement of opinion is actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is nonactionable as a matter of law." *Wynne v. Loyola Univ. of Chicago*, 318 Ill. App. 3d 443, 452 (2000).

In deciding whether statements reflect fact or opinion, courts consider "whether the language of the statement has a precise and readily understood meaning, whether the context in which the statement appears negates the impression that the statement has factual content, and whether the statement can be objectively verified as true or false." *Naylor v. Rockford Park Dist.*, No. 98 C 50315, 1999 WL 626762, at *4 (N.D. Ill. July 14, 1999) (citing *Hopewell v. Vitullo*, 299 Ill.App.3d 513, 518–19 (Ill. App. Ct. 1998)). The Court agrees with the Bank that the statements that Zhang lacks "expertise, commercial sense, and team management skills" are "too vague to have a readily understood meaning." *Manjarres v. Nalco Co.*, No. 09 C 4689, 2010 WL 918072, at *3 (N.D. Ill. Mar. 9, 2010). As courts have observed with terms like "unprofessional" and "incompetent," "[t]he meaning of such general terms easily

could differ among Plaintiff's colleagues." *Id.* And "[w]ithout any details, the Court can only speculate as to the specific meaning intended." *Id.*; *see also Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 519 (Ill. App. Ct. 1998) (statement that employee was "fired because of incompetence" was nonactionable opinion because "its broad scope renders it lacking the necessary detail for it to have a precise and readily understood meaning"). The outcome might be different if Zhang were accused of lacking a precise level of expertise (such as a specific certification or qualification) or expertise in a more specific subject matter (for example, in a computer tool or a niche area of finance). But as it stands, the general statement that she "lacked expertise" is too vague to state a claim. *See Gerrard v. Garda*, No. 08-CV-1146, 2009 WL 269028, at *3 (C.D. Ill. Jan. 30, 2009) (statements that plaintiff "had no business expertise" and "was inept at his business practice" were not actionable for defamation claim).

Because the Court finds that the alleged defamatory statements are nonactionable statements of opinions, the Court need not address the Bank's remaining arguments that the statements are capable of an innocent construction and are barred by qualified privilege. The Court grants the Bank's motion to dismiss Count V with prejudice.[5]

---

[5] In her response, Zhang points to several statements in other parts of her complaint she says constitute defamation, but none are actionable under Illinois law. The alleged statements relating to the September 2020 warning letter, the October 2021 "A-Corporation Call Loan Incident," and the October 2021 "L-Corporation Credit Agreement Incident" occurred outside the one-year statute of limitations period. [99] ¶¶ 17, 21–22, 58; *see also Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 923 (7th Cir. 2003) ("Illinois imposes a one-year statute of limitations on all defamation actions that begins to run when the defamatory statement was published."). As for the statements from an HR representative regarding her time away from work for doctor's appointments, those statements do not appear on the face

## G. Wrongful Termination (Count VI)

In Count VI, Zhang alleges that her termination "violated federal and state laws prohibiting wrongful termination, including Title VII of the Civil Rights Act of 1964, the ADA, and state labor laws." [99] ¶ 94. But beyond alleging elsewhere that her termination was prohibited retaliation under the ADEA and Title VII as described above, *see supra* at 14–15, 17, Zhang does not say how her termination violated any other state or federal statutes. Zhang does plead in passing that the Bank violated 12 U.S.C. § 1831j, but nowhere does she allege that she provided information to a federal banking agency or to the Attorney General, which is required to state a claim under § 1831j. *See* [99] ¶¶ 64–72, 94–99. Zhang's allegation that she filed a status report where she "expressed her *hope* for a trial where industry regulators, including the Federal Reserve and OCC, could be invited to observe and uncover the Bank's misconduct" does not suffice. *Id.* ¶ 65 (emphasis added). The Court grants the Bank's motion to dismiss Count VI with prejudice.

## H. Intentional Infliction of Emotional Distress (Count VII)

Finally, in Count VII, Zhang brings a claim for IIED under Illinois law. "[A] plaintiff may recover damages for [IIED] only if she establishes that: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict

---

of Zhang's complaint. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)). The remaining statements—that Zhang's behavior was "disrespectful and unprofessional," [99] ¶ 62, and that Sun "portray[ed] her condition as a 'privilege' for undue benefits," *id.* ¶ 80(1)—are non-actionable statements of opinion. *See Giant Screen Sports*, 553 F.3d at 535 (an actionable statement "must contain an objectively verifiable factual assertion").

severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604–05 (7th Cir. 2006).

The Bank argues that Zhang's IIED claim is preempted by the IWCA and the Illinois Human Rights Act ("IHRA"). *See* [105] at 14–17. However, the Court need not decide the Bank's preemption argument because even if Zhang's IIED claim were not preempted, Zhang fails to state an IIED claim on the merits. To state an IIED claim, the distress inflicted must be "so severe that no reasonable man could be expected to endure it." *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988) (quoting Restatement (Second) of Torts § 46, comment j, at 77–78 (1965)). "[T]here is general hesitation 'to find [IIED] in the workplace because, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for [IIED], nearly every employee would have a cause of action.'" *Richards*, 869 F.3d at 567 (quoting *Naeem*, 444 F.3d at 605).

Here, Zhang's allegation that she was required to complete a single training shortly after her brain surgery is not the sort of "truly egregious" behavior that amounts to IIED. *See Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008) ("Employers often and necessarily take actions during the course of business that result in emotional distress, but those actions cannot be classified as 'extreme and outrageous' unless they 'go well beyond the parameters of the typical workplace dispute.'") (quoting *Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001)). Pleading an

25

IIED claim also requires that the actor "must either intend that his conduct inflict severe emotional distress[] or know that there is at least a high probability that his conduct will cause severe emotional distress." *McGrath*, 126 Ill. 2d at 86. Although Zhang alleges that the Bank ignored "clear warnings in [her] final email indicating suicidal thoughts," [99] ¶¶ 74(2), 101(1), she does not plead that the Bank intended to cause Zhang further harm or knew that she would experience severe emotional distress from its failure to act under the circumstances.

Zhang's arguments in defense of her IIED claim are unavailing. She argues that the Bank is "not just any employer" because, "[a]s a foreign bank operating in the U.S., it is subject to heightened oversight." [109] at 16. She further argues that the Bank's "retaliation was particularly egregious given [Zhang's] role as a highly trained banking professional, whose career was built on integrity, compliance, and risk management." *Id.* But Zhang does not offer (and the Court is not aware of) any authority suggesting that the egregiousness of a defendant's conduct depends upon the level of regulation over the defendant or the sophistication of a plaintiff's career choice. Therefore, for the reasons discussed, the Court grants the Bank's motion to dismiss Count VII with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Bank's motion to dismiss. [104]. Zhang may proceed only with (1) her discrimination claim under the ADEA and (2) her failure to accommodate claim under the ADA.

Because Zhang has already had ample opportunities to amend her pleadings, *see* [37]; [41]; [72]; [92], her remaining claims are dismissed with prejudice, meaning she is not permitted to file an amended complaint, *see Agnew*, 683 F.3d at 347 ("[A] district court is not required to grant [leave to amend] when a plaintiff has had multiple opportunities to state a claim upon which relief may be granted."). The Court also grants the Bank's motion to strike the exhibit to Zhang's complaint pursuant to Rule 12(f). [104].

The Bank has until 9/3/25 to answer Zhang's amended complaint. *See* Fed. R. Civ. P. 12(a)(4)(A). The parties are directed to appear on 9/11/25 at 9:30 a.m. for a status hearing to discuss next steps in the case, including a timeline for fact discovery or settlement discussions if there is mutual interest for such discussions. In advance of the status hearing, the parties are directed to meet and confer on these issues. Zhang is directed to promptly disclose to the Bank her second EEOC charge.

_____
Georgia N. Alexakis
United States District Judge

Date: 8/19/25